Filed 1/31/23  P. v. Faatai CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B318851 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA110614) |
| v. | |
| TAYLOR L. FAATAI, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James D. Otto, Judge.  Remanded for resentencing.

Mark Yanis, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Stefanie Yee, Deputy Attorneys General, for Plaintiff and Respondent.

At Taylor Faatai's trial for the murder of Christopher Johnson, the trial court admitted drawings Faatai had done depicting shootings and a video featuring Faatai rapping about gangs. Faatai contends that the evidence should have been excluded and that its admission rendered his trial fundamentally unfair. We conclude that Faatai was not prejudiced by the admission of the evidence but remand for resentencing because the trial court imposed an unauthorized sentence.

## BACKGROUND

I.      Events leading to Johnson's murder

Faatai was a member of the Sons of Samoa gang, which goes by SOS. His moniker was Mace, and he used maceso3rd for his Instagram account. In Instagram posts, Faatai expressed his contempt for people who pretend to be gang members.[1] In May 2018, he posted, "Act a fool where u say u act a fool at, cos all this Gram bangin[2] gon get u Waccd, thas a fact. I'm ina field fake niggas INTERNET." In August 2018, he posted, " 'Aye dummy … Don't rap about IT, if u ain't doing IT #mace3rdsaidit FCN liers.' " The next month, he posted, "Jus cos they got tha street number at the end of they ig name don't mean they from tha Set…. fcn actors 100 100 100 #WeDontKnoYouNigga #AintNevaStarvedWitUs." Another post warned, "Stop usin my Set for tha fame u weird ass niggas. I'm chin checn niggas on

---

[1]     A gang expert testified that it is disrespectful to claim membership in a gang to which you do not belong. Doing so can result in being injured or killed.
[2]     Gram banging is a way to promote one's gang using social media.

sight cuhs (wheelchair emoji) St... y'all betta stay ready, #NoWarninShots On my Grandpa in heaven 100 100 100."

Dejon Smith, who went by Musterd, was Faatai's friend.[3] Musterd had also been friends with Johnson, but they had a falling out. Johnson claimed to be a member of the Sex Money Murder gang, which is a Crip set in North Long Beach. On October 5, 2018, Musterd called out Johnson on Instagram, saying "you are not a gang member! You are not from Long beach. You are from Wilmington bitch. I am not from out here Nigga I'm from south central. Bittch. I will beat yo fuckin ass bitch." Musterd then messaged Faatai that "bro is a claimer he don't even bang. He don't wanna catch this fade he wanna bring other people in to this but ok Ima look for bro rn." Faatai responded, "fuc ass monkey nigga. Ik that was chu when I seen u." "Monkey" and "Sex Monkeys" are derogatory terms for members of Sex Money Murder.

The next day, October 6, 2018, Musterd messaged Faatai, "Nd said so Wat fucc[4] sos. Me he said fucc that bitch ass nigga mace." Faatai responded, "Say no mas" and "its on." About 10 minutes later, Faatai messaged savytherado32 that "Niggas doesn't tha set" and "I need my shit ASAP." According to the gang expert, in this context, "shit" usually refers to a weapon. Savytherado32 said he would "give you your shit" but would not go on a "burnt mission,"[5] to which Faatai responded, "I fight my

---

[3] Because another witness shares the same surname, we refer to Dejon Smith as Musterd to avoid confusion, intending no disrespect.

[4] The gang expert testified that because a "c" followed by a "k" means Crip Killer, gang members will cross out the "k" and replace it with a "c."

[5] A "mission" usually refers to carrying out violence.

own battles." They then texted about meeting, and Faatai told savytherado32 to meet Faatai, who was waiting in a tan Chevy Traverse. In additional messages to savytherado32, Faatai continued to refer to "monkeys."

On October 7, 2018, Johnson messaged Musterd that they could have talked out their problems, but Musterd had "made it serious" and now Johnson felt "threatened when you had Mace on me." Musterd told Johnson that he'd "added mace name for no reason in a argument then sos. nowwww mace is it bro. Bro I'm sorry but mace Finna get you bro. Nd he don't play play bro. you fucked up from me me for him bro it's too late."

## II. The murder of Johnson

On October 25, 2018, at around 6:00 p.m., high school friends Autaija Smith, Patricia Rose, Manuel Torres, Faith Bustos, and Johnson, were walking home after grabbing snacks from a store. They were at an intersection when a guy got out of a car. Smith described the guy as almost six feet tall and "big," "like broad in the shoulders," and wearing a jacket, long pants, and blue underwear. When Johnson saw the guy, Johnson began to "speed walk[ ]" away from the car. The guy, who had a gun out, and Johnson exchanged words, and Smith heard the guy say that Johnson was talking about "fuck monkeys." Johnson said he wasn't trying to fight and didn't know what the guy was talking about. Smith then saw the guy fire five shots.

Rose testified at trial that Johnson had been her boyfriend. She described the car that passed them as "like a SUV" and light goldish in color. A guy wearing a Bape brand hoodie with a shark design on it exited from the front passenger side, ran to the group of friends, took out a gun, and said, " 'You know what this is. Mace, nigga. Fuck Monkeys.' " Johnson replied that he had

4

nothing on him and raised his hands.  Rose asked what the problem was, and what was going on.  Johnson ran, and the guy fired at him.  After shooting at Johnson, the guy ran back to the car, and Rose took photos of the car.  In video after the shooting, Rose can be heard saying that Musterd "called this boy to shoot him" and that the shooter was Samoan with a hood name of Mace.

At trial, Rose identified Faatai as the shooter.  Rose had heard Mace's name before because Mace had made a song, and Johnson's friend, Musterd, had a Samoan cousin named Mace.  Rose and Johnson followed Musterd on Instagram.  After Johnson was killed, Rose found photographs of Mace on Instagram and recognized him as the shooter.  According to Rose, Johnson and Musterd had argued about a girl, and Rose suggested that Musterd told Mace about the argument.

Torres also testified at trial.  He described the shooter's car as "copperish, like, a chevy," and boxy in structure.  When the shooter approached Johnson, Torres heard Johnson say he didn't have anything on him, but the shooter said he didn't care.  The shooter wore a Dodgers sweatsuit, a Bape sweatshirt with a shark face, and red vapor air max shoes.  He had curly hair.  Although Torres said he saw the shooter's face, at trial Torres did not identify Faatai as the shooter when first asked if he saw the shooter in the courtroom.  But when asked a second time, Torres identified Faatai.  Torres had previously identified Faatai as the shooter at the preliminary hearing.  Also, two days after Johnson was murdered, Torres identified Faatai as the shooter from a photographic six-pack. Torres wrote on the six-pack that he saw about 75 percent of the shooter's face because the shooter had a hood on, "but I seen his Instagram page and instantly knew it

5

was him because I seen him shoot my brother Christopher cold hearted with my own eyes."

III.   The investigation

Five 9-millimeter casings recovered from the scene were fired from the same gun.  From the photographs Rose took of the car, a detective identified it as a 2011 Chevy Traverse, which is a small SUV.

Law enforcement searched Faatai's home on November 1, 2018.  In a bedroom, they found a notebook with writing and drawings in it.  In one drawing (People's exhibit 61), an individual holding an automatic firearm shoots a bullet through the head of a man wearing a baseball cap backwards.  A second drawing (People's exhibit 62) depicts a drive-by shooting:  two people shoot from a car at two people.  "SOS" and "Mace#3" are written on the drawing.  The third drawing (People's exhibit 92) is of a man shooting an automatic gun at a bald man as the gun ejects five casings.  "Sons of Samoa" is written above the shooter's head.

A rap video entitled Set Trippin and featuring Faatai was played for the jury.  In it, Faatai raps about the "S gang" and "niggas trippin' in the field," and "Grip the steel, where you from?"  Faatai identifies himself as "Mace 3 with the strap," and raps, "Keep the set out yo' mouth, nigga if you don't want no beast.  Waistline or the hands knock out yo' teeth."  Faatai and other men in the video display guns.

IV.   Faatai's defense

Faatai testified in his defense.   Faatai knew Johnson but had no personal problems with him.  Faatai denied being a member of Sons of Samoa, involvement in any drive-by shooting,

and shooting Johnson. Instead, on the day Johnson was killed, Faatai was supposed to perform at a nightclub in Long Beach, so he spent the day preparing for the show. At 6:00 p.m., when Johnson was shot, Faatai was at home, resting. Although the show didn't start until about 10:00 or 11:00 p.m., Faatai arrived at the club at about 9:00 p.m. However, he did not perform because his fellow artist didn't show up.

When asked about his Instagram account, he explained that he was probably talking about clothes when he messaged a friend saying he needed "my shit ASAP." He admitted he was in a tan Chevy Traverse on October 6, 2018, but that was the last time he was in that car. And when he was in it, he was under the influence, so he did not know whose car it was.

Faatai drew People's 61, 62, and 92 when he was at juvenile and fire camps in 2016.

Faatai admitted he had a Bape hoodie with a shark on it, but he had it in the summer not in the fall when Johnson was killed.[6]

V. Verdict and sentence

A jury found Faatai guilty of first degree murder (Pen. Code,[7] § 187, subd. (a); count 1) with true findings on personal gun use allegations (§ 12022.53, subds. (b), (c) & (d)) and of possession of a firearm by a felon with one prior (§ 29800, subd.

---

[6] A photograph of Faatai wearing the sweatshirt in July 2018 was admitted.
[7] All further undesignated statutory references are to the Penal Code.

(a)(1); count 2).[8]  On February 14, 2022, the trial court sentenced Faatai to 50 years to life on count 1 plus eight months on count 2.

## DISCUSSION

I.    Admission of the rap video and drawings

A.    *Additional background*

Before trial, the People stated its intent to introduce the drawings discovered in Faatai's bedroom and the rap video on the ground they were relevant to prove motive and identity.  That is, Faatai killed Johnson because Faatai thought that Johnson had disrespected Faatai's gang, Sons of Samoa.  The rap video was relevant to that motive because it mentioned Sons of Samoa, talked about people who disrespect the gang, showed Faatai displaying semiautomatic handguns, and Faatai used his moniker, Mace.  Over a defense objection under Evidence Code section 352 that all the video showed were people pretending to be gang members so that they could break into the music business, the trial court admitted the rap video as well as the drawings, finding they were not unduly prejudicial and were relevant to motive and identity.

During his opening statement, the prosecutor played the rap video and highlighted for the jury that at the end of it, Faatai "says Mace3 with a strap [gun]."  The prosecutor also referred to the drawings as depicting Johnson's murder, adding that "there are other pictures of the defendant shooting other enemies of his

---

[8]    At trial, the parties stipulated that Faatai had a prior felony conviction.  Also, the trial court dismissed gang allegations under section 186.22, subdivision (b)(1)(C) and (5) when the prosecutor was unable to proceed on them.

gang and referencing all of his allies and who his enemies are. And finally, a third picture showing him conducting a drive by."

Then, during trial, the prosecutor introduced the rap video and drawings into evidence. When the video was played, the trial court instructed that it was coming in for the limited purpose of motive and identity.

The prosecutor again referred to the rap video and drawings in closing argument, saying they established that Faatai was a member of Sons of Samoa known as Mace because the video and drawings referenced the gang and the moniker. References to other gangs established Faatai's willingness to kill enemies. And although the prosecutor said he did not know when Faatai made the drawings, the prosecutor argued that Faatai's testimony that they were done in 2016 was not credible and instead, the person being shot "in this drawing[9] bears a remarkable resemblance to" to Johnson. After referencing Rose's testimony that she heard the shooter identify himself as Mace, the prosecutor pointed out that Faatai had identified himself as Mace3 in the video.

The trial court instructed the jury with CALCRIM No. 1403, that it could consider "evidence of gang activity only for the limited purpose of deciding whether the defendant had a motive to commit the charged crime – the crime as charged. The identity of the shooter. [¶] You may also consider this evidence when you evaluate the credibility or believability of a witness and when you consider the facts and information relied upon by an expert witness in reaching his or her opinion. [¶] You may not

---

[9]     It is unclear to which drawing the prosecutor was referring. If to the drawing of a man being shot through the head, the victim in that drawing is bald. Johnson was not bald.

consider this evidence for any other purpose.  You may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit a crime."

B.    *Harmless error*

Faatai contends that the rap video and drawings should have been excluded under Evidence Code section 1101, which generally prohibits bad character evidence, and that the evidence was not otherwise admissible under the exception in subdivision (b) of that section for evidence relevant to prove, for example, motive or identity.  (See generally *People v. Ewoldt* (1994) 7 Cal.4th 380.)  He further contends that the evidence was inadmissible under recently enacted Evidence Code section 352.2, which restricts admissibility of forms of creative expression.[10]

---

[10]    Evidence Code section 352.2 provides, "In any criminal proceeding where a party seeks to admit as evidence a form of creative expression, the court, while balancing the probative value of that evidence against the substantial danger of undue prejudice under Section 352, shall consider, in addition to the factors listed in Section 352, that:  (1) the probative value of such expression for its literal truth or as a truthful narrative is minimal unless that expression is created near in time to the charged crime or crimes, bears a sufficient level of similarity to the charged crime or crimes, or includes factual detail not otherwise publicly available; and (2) undue prejudice includes, but is not limited to, the possibility that the trier of fact will, in violation of [Evidence Code] Section 1101, treat the expression as evidence of the defendant's propensity for violence or general criminal disposition as well as the possibility that the evidence will explicitly or implicitly inject racial bias into the proceedings."

We will assume without deciding that the evidence was inadmissible under Evidence Code section 1101.[11] Even so, it is not reasonably probable the verdict would have been more favorable to Faatai absent the error. (See, e.g., *People v. Coneal* (2019) 41 Cal.App.5th 951 [applying state law harmlessness standard of *People v. Watson* (1956) 46 Cal.2d 818].)[12] *Coneal*, for example, involved the retaliatory murder of a gang member. At the defendant's trial for the murder, the trial court admitted five rap videos featuring the defendant and/or his gang and containing violent lyrics about killing rivals, drive-by shootings, and catching rivals by surprise. (*Id.* at p. 968.) The court found that absent evidence the lyrics represented "real versus made up events, or some persuasive basis to construe specific lyrics literally, the probative value of lyrics as evidence of their literal truth is minimal." (*Ibid.*) Otherwise, the rap videos skirted too dangerously close to constituting evidence of the defendant's bad character and should have been excluded. (*Id.* at p. 971.) Although the trial court erred in admitting the rap videos, *Coneal*, at page 972, found their admission harmless because the defendant admitted he was a gang member, admitted trying to get a gun the day the victim was killed, and admitted being at the scene of the shooting, although he denied being the shooter. Ballistics evidence also showed that there were two shooters, contrary to the defendant's story that there was just one.

---

[11] We therefore do not decide whether Evidence Code section 352.2 applies retroactively to this case and whether the evidence was admissible under that section.

[12] We would reach the same conclusion even under the beyond a reasonable doubt standard in *Chapman v. California* (1967) 386 U.S. 18.

Here, any prejudice from the rap video and drawings, first, was mitigated by the trial court's limiting instruction that the jury could consider evidence of gang activity "only for the limited purpose of deciding whether" Faatai had a motive to commit the charged crime, the shooter's identity, and to evaluate the credibility or believability of a witness. (CALCRIM No. 1403.) The jury was further instructed not to consider the evidence for any other purpose, including to conclude Faatai was a person of bad character or that he had a disposition to commit a crime. We presume the jury followed this instruction. (See, e.g., *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1368.) Faatai, however, appears to suggest that the trial court should have instructed the jury with CALCRIM No. 375. But defense counsel did not ask for that instruction and instead agreed that the jury should be instructed with CALCRIM No. 1403. Moreover, CALCRIM No. 375 limits the use a jury may make of uncharged *criminal conduct* evidence. It is unclear that CALCRIM No. 375 applies to the rap video and the drawings, and Faatai's appellate counsel makes no clear argument it does.

Second, the rap video and the drawings arguably were not compelling evidence that Faatai had a motive to kill Johnson, that Faatai was known as Mace, and that he killed Johnson. While the rap video tended to show that Faatai was a gang member known as Mace, other evidence left little doubt on that score: Mace was the name on Faatai's Instagram account. Also, his Instagram posts were replete with references to his moniker Mace, to Sons of Samoa or SOS, and to a gang lifestyle. The drawings, while depicting violent shootings, are not clear references to Johnson's murder, notwithstanding the prosecutor's argument that at least one bore a resemblance to it. Rather, the

12

victim in People's exhibit 61 wears a baseball cap and is shot through the head: Johnson was not wearing a baseball cap when he was shot, and he was not shot through the head. In People's exhibit 62, two people shoot from a car at two victims at 15th and Cedar: Johnson's lone killer got out of the car and shot only Johnson, and the murder did not occur at 15th and Cedar. The victim in People's exhibit 92 is bald and wears a shirt with a M on it: Johnson was not bald and was not wearing such a shirt when he was shot. Therefore, there were significant differences between what the drawings depicted and Johnson's murder.

Third, Faatai's own statements established his motive to kill Johnson. A gang expert explained that falsely claiming to be a gang member is disrespectful to real gang members and can result in violent retaliation, and Faatai repeatedly expressed his contempt for such "fake n[ ]" in his Instagram posts. Musterd then told Faatai about one such "claimer": Johnson. And when Musterd added that Johnson had disparaged Sons of Samoa and Mace, Faatai called Johnson a "fuc ass monkey" and said, "it's on." A reasonable inference from this is that Faatai intended to retaliate against Johnson.

Fourth, there was similarly strong evidence that Faatai intended to retaliate specifically by killing Johnson, because within minutes of learning that Johnson had disrespected him and Sons of Samoa, Faatai told savytherado32 that he needed his "shit ASAP." Savytherado32 agreed to give Faatai his "shit"— inferentially a gun—but refused to go on a mission with Faatai, who said he could "fight my own battles." Further Instagram exchanges between Faatai and savytherado32 show that the two did indeed meet, the reasonable inference being so that savytherado32 could give Faatai a gun. (See, e.g., *People v.*

13

*Coneal, supra,* 41 Cal.App.4th at p. 972 [defendant admitted he tried to get a gun the day victim was killed].)

Other evidence established that Faatai intended to kill Johnson. Musterd warned Johnson that Mace was "Finna get you bro," and "he don't play play bro. you fucked up from me me for him bro it's too late." Johnson told Musterd that he felt threatened by Mace. Indeed, the evidence suggests that Johnson knew his killer and was immediately afraid, because when the shooter got out of the Chevy Traverse, Johnson started to walk quickly away.

Next, physical evidence linked Faatai to the murder. The killer wore a Bape hoodie with a shark on it, and Faatai owned such a hoodie. Also, Faatai told savytherado32 on October 6, 2018 that he was in a tan Chevy Traverse. At trial, Faatai admitted he was in that car on October 6. Weeks later, on October 25, Johnson's killer got out of and escaped in a tan or goldish Chevy Traverse. Thus, just weeks before Johnson was killed, Faatai was in a car that was the same make, model, and color of the car the killer used.

Finally, Rose and Torres, both of whom were physically close to the shooter and Johnson during the incident, identified Faatai as the killer. Rose heard the killer identify himself as "Mace." Both witnesses were steadfast in their identifications. Immediately after Johnson was shot, video shows Rose saying that the shooter was a Samoan named Mace. Rose again identified Faatai as the shooter at trial. Torres similarly maintained that Faatai was the shooter, identifying him just days after the murder from a photographic six-pack, at the preliminary hearing, and at trial.

14

Faatai, however, suggests that Rose's and Torres's identifications were unreliable. Although he cites general pronouncements about potential problems with eyewitness identification (see, e.g., *United States v. Wade* (1967) 388 U.S. 218, 228), the defense did not call an expert on identification and did not attack the witnesses' identifications on this ground. And although he further suggests that this case involved cross-racial identifications, the record does not conclusively establish the race of all the witnesses and parties.

Faatai also suggests that Rose was not credible because she could not recall whether she witnessed an altercation between Johnson and Musterd during which Johnson pulled a knife on Musterd. A jury, however, is entitled to believe parts of a witness's testimony and disbelieve other parts. (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67.) The jury therefore could believe that Rose correctly identified Faatai as the shooter *and* that she was lying about her ability to recall the incident between Johnson and Musterd. Also, even if the jury believed that Rose was lying about her ability to recall the incident, then that Johnson pulled a knife on Musterd, who was Faatai's friend or cousin, could further show that Faatai had a motive to kill Johnson.

Faatai also questions Rose's credibility because she wore to trial a shirt stating on the back, "Justice for I.C.," referring to Johnson. When, after Rose took the oath, the parties realized what she was wearing, the court took a break and directed Rose to put on a jacket. It is unclear whether the jurors saw the back of Rose's shirt. But even if they did, they were clearly aware that Rose might have a bias, because she testified that Johnson was her boyfriend. The jury was fully able to evaluate and to weigh

15

any issues about Rose's credibility. (See generally *People v. Lee* (2011) 51 Cal.4th 620, 632 [determining witness's credibility is exclusive province of jury].)

Nor did Faatai's testimony necessarily help his cause. Although he denied shooting Johnson, Faatai merely said that at 6:00 p.m. when Johnson was shot, Faatai was at home resting, in preparation for a show later that evening that never happened. Faatai also admitted key facts linking him to the murder. He admitted he had a Bape hoodie with a shark design on it like the one the shooter wore, except he said he owned it in the summer of 2018 but not the fall of 2018 when Johnson was murdered. He admitted being in a tan Chevy Traverse in the weeks before the murder. He admitted using the monikers Mace and Maceso3rd. And Faatai admitted that "probably" one of his posts referred to people disrespecting the set [gang], even though he denied being a member of Sons of Samoa.

Faatai also gave the jury reason to question his credibility by giving answers that even on the cold record were flippant and dismissive. When asked what he meant by "fissn" in one Instagram post, he said, "I don't know. I'm not a literature teacher"; when asked what S stood for in another Instagram post, " 'I know chu, but this S," Faatai said that S is the 19th letter in the alphabet; when asked what he meant by responding to a post with "monkey," he said that monkeys are animals that live in the jungle; and when asked why he referred to Johnson as a "monkey," when it is also a racial slur, Faatai said that Johnson looked like a monkey.

The evidence of Faatai's guilt was thus overwhelming and compelling such that it is not reasonably probable a jury would have rendered a more favorable verdict had the rap video and

drawings not been admitted.  Indeed, we note that the jury reached its verdict in about 30 minutes, suggesting that the jury did not consider the issue of Faatai's guilt to be close.  (See, e.g., *People v. Thomas* (2011) 51 Cal.4th 449, 484.)

For the same reasons, we do not agree that admitting the rap video and drawings violated Faatai's due process rights by rendering his trial fundamentally unfair, which occurs when there are no permissible inferences to be drawn from the evidence.  (*Coneal, supra,* 41 Cal.App.5th at p. 972.)  As we have said, the evidence here supported multiple inferences.

II.    Sentencing error

The trial court imposed an indeterminate term of 50 years to life (25 years to life for the murder plus 25 years to life for the gun enhancement) on count 1 and a determinate term of eight months (one-third the middle term) on count 2.  In so sentencing Faatai, the trial court effectively treated the indeterminate term in count 1 as the principal term and imposed a subordinate term of one-third the middle term on count 2.  This was error.  California Rules of Court, rule 4.451(a), requires a determinate term (here, count 2) to be computed *without reference to* the indeterminate term (here, count 1).  The trial court therefore had to sentence Faatai on count 2 to a term of 16, 24, or 36 months.  Because the eight month term could not lawfully be imposed on count 2, that term was unauthorized.  (See generally *People v. Scott* (1994) 9 Cal.4th 331, 354.)

17

## DISPOSITION

The sentence is vacated, and the matter is remanded for resentencing.  The judgment of conviction is otherwise affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

NGUYEN (KIM), J.*

---

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18